UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANJEET ESCAMILLA,

    Plaintiff,

v.

BLUE CROSS BLUE SHIELD
OF MICHIGAN,

    Defendant.
_____/

Case No. 23-cv-10279
Honorable Linda V. Parker

### OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT (ECF NO. 22) AND DENYING AS MOOT DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS (ECF NO. 21)

This case arises from the COVID-19 pandemic and Defendant Blue Cross Blue Shield of Michigan's decision to deny Plaintiff Ranjeet Escamilla a religious exemption from its mandatory vaccination policy.  Escamilla initiated this action on February 2, 2023, and filed a First Amended Complaint on April 7, 2023, asserting the following claims: (I) religious discrimination based on a failure to accommodate Escamilla's religious beliefs in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (II) disparate treatment discrimination in violation of Title VII; and (III) disparate treatment and intentional discrimination based on religion in violation of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA").  (ECF No. 8.)

Blue Cross Blue Shield of Michigan ("BCBSM") answered Escamilla's First Amended Complaint (ECF No. 18) but now seeks judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (ECF No. 21). Escamilla filed a response to the motion (ECF No. 23) but also has moved to file an amended pleading pursuant to Federal Rule of Civil Procedure 15(a) (ECF No. 22). Both motions have been fully briefed. (ECF Nos. 24-26.) Because the Court concludes that Escamilla's proposed Second Amended Complaint alleges sufficient facts to support her claims and that the remaining considerations weigh in favor of allowing her to file her amended pleading, it is granting the motion to amend and is denying as moot BCBSM's Rule 12(c) motion.

## I.     Applicable Standards

A Rule 12(c) motion for judgment on the pleadings is subject to the same standard of review as a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). *Hindel v. Husted*, 875 F.3d 344, 346 (6th Cir. 2017) (citing *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008)). A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

Pursuant to Rule 15(a), leave to amend is "freely" granted "when justice so requires." *See* Fed. R. Civ. P. 15(a). The United States Supreme Court has advised that a plaintiff should be allowed the opportunity to test a claim on the merits if the facts and circumstances underlying the claim suggest that it may be a proper subject of relief. *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, the Court further instructed that a motion to amend a complaint should be denied if the amendment is brought in bad faith or for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile. *Id*.

BCBSM does not argue bad faith, undue delay, or prejudice in response to Escamilla's motion to file an amended complaint. Instead, it relies on futility. An amendment is futile when the proposed amendment fails to state a claim upon which relief can be granted and thus is subject to dismissal pursuant to Rule 12(b)(6). *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

II.     **Factual Allegations**[1]

Escamilla worked for BCBSM as a Systems Administrator II. (ECF No. 8 at PageID. 60, ¶ 10.) In late November 2021, BCBSM announced a mandatory COVID-19 policy for its employees and contractors, requiring vaccination by December 8, 2021. (*Id*. at PageID. 60-61, ¶¶ 11-12.) Employees seeking an accommodation for religious or medical reasons were required to do so by November 11. (*See id*. at PageID. 61, ¶¶ 14, 15.)

Escamilla sought a religious exemption from BCBSM's vaccine policy, but the request was denied resulting in her ultimate termination effective January 5, 2022. (*See id.* at PageID. 64, ¶¶ 42-44.) She alleges that the process for interviewing employees who sought an accommodation was arbitrary and deficient and resulted in inconsistent decisions. (*See id*. at PageID. 61-62, ¶¶ 17-29.) She further alleges that BCBSM used the mandatory vaccination policy to reduce staffing costs and to avoid the need to incentivize employees to take early retirement to accomplish that goal. (*Id*. at PageID. 63, ¶ 31.)

III.    **Applicable Law & Analysis**

Escamilla claims BCBSM violated Title VII and the ELCRA by failing to accommodate her "sincerely held religious beliefs" and grant her exemption request. She also claims that BCBSM violated Title VII and the ELCRA by

---

[1] The Court provides a general summary here and discusses the allegations in more depth as relevant to the pending motions in the next section.

rejecting her accommodation request when similarly situated employees with different religious beliefs were granted exemptions to the vaccination policy.

### A. Sincerely Held Religious Beliefs

BCBSM argues that Escamilla's claims must be dismissed and her request to amend denied because she fails to plead sufficient facts to plausibly allege that her objections to the COVID-19 vaccine are based on sincerely held religious beliefs.

In her First Amended Complaint, Escamilla alleges that she "seeks to make all decisions, especially those regarding vaccination and other medical decisions, through prayer[,]" and "holds sincere *bona fide* religious beliefs that preclude her from receiving a COVID-19 vaccine." (ECF No. 8 at PageID. 63, 67, 72, ¶¶ 35, 67, 93.) The Court need not decide whether these allegations are sufficient, however, as Escamilla provides a more expansive explanation of her beliefs in the proposed Second Amended Complaint. (*See* ECF No. 22-1 at PageID. 667-70, ¶¶ 33-39.)

In its Rule 12(c) motion and response to Escamilla's motion to amend, BCBSM cites a long list of cases—albeit none of which are in fact decisions of "*this Court*"[2] or binding—where allegations similar to Escamilla's were found

---

[2] BCBSM repeatedly emphasizes that decisions cited in its briefs are from "this Court." (*See, e.g.*, ECF No. 24 at PageID. 731, 738.) However, opinions and orders issued by other judges in this *District* are not decisions of the undersigned— i.e., "this Court." Further, they are not controlling. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding

insufficient to allege a plausible violation of the plaintiff's "sincere religious beliefs." (*See* ECF No. 21 at PageID. 465-67 & n.4; ECF No. 24 at PageID. 731-34 & n.3.) This Court is not convinced that these cases reach the correct result. Even Escamilla's allegation that she "holds sincere *bona fide* religious beliefs that preclude her from receiving a COVID-19 vaccine" seem adequate at the pleading stage.[3] In any event, her proposed amended pleading says more.

The question is whether Escamilla's beliefs are rooted in religion, rather than personal, political, or medical convictions. *See Holt v. Hobbs*, 574 U.S. 352, 360-61 (2015) (citing *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 717 n. 28 (2014)). She alleges they are religious. The sincerity of those beliefs must be credited when deciding BCBSM's motion for judgment on the pleadings, even if BCBSM is later able to show otherwise.

"[T]he sincerity inquiry 'is almost exclusively a credibility assessment.'" *Ackerman v. Washington*, 436 F. Supp. 3d 1002, 1012 (E.D. Mich. 2020)*, aff'd* 16

---

precedent in either a different judicial district, the same judicial district, or even upon the same district judge in a different case.") (brackets omitted); *Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 428 (2011) ("[F]ederal district judges, sitting as sole adjudicators, lack authority to render precedential decisions binding other judges, even members of the same court.").

[3] This allegation does not appear significantly different than one asserting that an individual's sincerely held religious beliefs prevent his or her consumption of pork or alcohol. In those instances, would a court at the pleading stage require further factual enhancement to explain how or why the individual's religion precludes these practices or dissect the belief to assess whether it is religious as opposed to medical?

F.4th 170 (6th Cir. 2021) (quoting *Kay v. Bemis*, 500 F.3d 1214, 1219 (10th Cir. 2007)) (brackets omitted). And while a "court may inquire 'into the sincerity of a[n individual]'s professed religiosity[,]' . . . 'the truth of a belief is not open to question[.]" *Id*. (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005), then *Moussazadeh v. Tex. Dep't of Crim. Just.*, 703 F.3d 781, 790-91 (5th Cir. 2012)). "[C]ourts do not inquire into whether a belief is 'mistaken or insubstantial[.]'" *Ackerman*, 16 F.4th at 180-81 (quoting *New Doe Child #1 v. Cong. of U.S.*, 891 F.3d 578, 586-87 (2018)). Further, "[w]hile sincerity is important, 'it must be handled with a light touch, or 'judicial shyness.'" *Id*. (quoting *Moussazadeh*, 703 F.3d at 792).

"To examine religious convictions more deeply, would stray into the realm of religious inquiry, an area into which courts are forbidden to tread." *Id.* (quoting *Moussazadeh*, 703 F.3d at 792) (brackets omitted). Finally, sincere religious beliefs are protected regardless of "whether or not [they are] compelled by, or central to, a system of religious belief," and whether or not they "are shared by all members of a religious sect." *Ackerman*, 436 F. Supp. 3d at 1012 (quoting *Holt*, 574 U.S. at 361). As the Sixth Circuit has expressed, the "sincerity prong is not a difficult hurdle[.]" *Id.* at 180.

For these reasons, the Court is denying BCBSM's motion for judgment on the pleadings based on its argument that Escamilla insufficiently alleges a sincere

7

religious belief. It is not futile for Escamilla to amend her pleading to expand the allegations supporting this belief.

### B. Disparate Treatment

Title VII and the ELCRA prohibit employers from *inter alia* discriminating against an employee because of the individual's religion. 42 U.S.C. § 2000e-2(a)(1); Mich. Comp. Laws § 37.2202. Disparate treatment "occur[s] where an employer has 'treated a particular person less favorably than others because of' a protected trait." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (quoting *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 985-86 (1988)) (brackets omitted). BCBSM argues that Escamilla's disparate treatment claims should be dismissed and leave to amend the claim should be denied because she does not allege direct evidence of its discriminatory motive and fails to allege facts establishing that it treated any similarly situated employee more favorably. BCBSM asserts that Escamilla must provide specifics regarding employees who received more favorable treatment.

The Sixth Circuit recently confirmed that "[a] plaintiff does not have to allege specific facts establishing a prima facie case of discrimination in the[] complaint." *Savel v. MetroHealth Sys.*, 96 F.4th 932, 943 (2024) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)). "Plaintiffs . . . just need to plausibly allege that they were . . . treated differently because of their religion." *Id.* "If a reasonable court can draw the necessary inference of discrimination from

8

the factual material stated in the complaint, the plausibility standard has been satisfied." *Id*. (quoting *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012)).

In *Savel*, the Sixth Circuit held that two plaintiffs adequately pled a viable disparate treatment claim where they alleged that the defendant "categorically denied all religious exemption requests [from its COVID-19 vaccination mandate] while granting some nonreligious exemption requests[.]" *Id.* at 944. The defendant supported its decision by claiming that those seeking religious exemptions "could not fully perform their duties remotely and no other reasonable accommodation was available." *Id.* at 937. Some medical exemption requests were granted, however. *Id.*

In her proposed Second Amended Complaint, Escamilla appears to similarly allege that BCBSM adopted a categorical policy to deny religious-based exemptions to its COVID-19 vaccination policy. (*See* ECF No. 22-1 at PageID. 672, ¶¶ 59-61.) In fact, she expressly asserts that BCBSM had "a blanket policy to deny religious accommodation [requests]." (*Id*. at PageID. 673, ¶ 63.) BCBSM nevertheless argues that Escamilla's "blanket policy" theory is futile because it is false, as BCBSM in fact granted religious exemptions to many employees. (ECF No. 24 at PageID. 747 & 10.)

Escamilla could not, and does not, dispute this. In fact, several paragraphs after alleging that BCBSM categorically denied religious exemptions, she

9

contradictorily alleges that BCBSM "granted accommodation to the COVID-19 vaccine requirement for other employees with religious beliefs that differ from Plaintiff." (ECF No. 22-1 at PageID. 675, ¶ 75; *see also id*. ¶ 76 ("Defendant cannot allege undue hardship when other employees performing similar job duties were granted religious and medical accommodations to the vaccine.")). Escamilla makes the same assertion in other filed documents, indicating that written discovery exchanged between the parties reflects that BCBSM "granted accommodations for religious beliefs and denominations that differ from [Escamilla] . . .." (*See* ECF No. 23 at PageID. 708) Some of that discovery was filed in another lawsuit by a former BCBSM employee who is asserting the same claims and is represented by the same counsel as Escamilla. *See* Ex. to Mot., *Harvey v. Blue Cross Blue Shield of Mich.*, No. 23-cv-11961 (E.D. Mich. filed Feb. 7, 2024), ECF No. 17-1 at PageID. 288-90. In those discovery responses, BCBSM admits that it granted religious exemptions to Christian, Catholic, Muslim, and Jewish employees. *See id.* This Court may consider this document when deciding BCBSM's pending motion. *See Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010).

      Escamilla, therefore, cannot realistically base her disparate treatment claim on a blanket policy to deny religious accommodation requests. In other words, to the extent her disparate impact claim is based solely on such a policy, it is futile.

But does Escamilla allege other facts suggesting she could plausibly allege this claim?  At the pleading stage, the Court concludes she has.

In support of her disparate treatment claim, Escamilla alleges in her First Amended Complaint and proposed Second Amended Complaint that BCBSM "allowed other unvaccinated employees without Plaintiff's same religious beliefs to be exempted from [its] vaccine mandate policy."  (ECF No. 8 at PageID. 71, ¶¶ 86, 89; *id.* at PageID. 72, ¶¶ 97, 101; ECF No. 22-1 at PageID. 679 ¶ 104; *id*. at PageID. 681 ¶ 115.)  Escamilla further alleges that she "was treated differently than similarly situated employees with different religious beliefs who were allowed to continue working despite not being vaccinated."  (ECF No. 8 at PageID. 71 ¶¶ 89, 101; ECF No. 22-1 at PageID. 680-81, ¶¶ 107, 110.)  She claims that BCBS "determined that some religious beliefs of its employees were valid . . . others were bogus."  (ECF No. 8 at PageID. 74, ¶ 106; *see also* ECF No. 22-1 at PageID. 682, ¶ 124.)  Escamilla admittedly is not aware of which religious beliefs BCBSM found "acceptable" and which it "discriminated against," and is relying on discovery to make this determination.  (ECF No. 8 at PageID. 74 ¶ 107; ECF No. 22-1 at PageID. 682, ¶ 125.)  Courts have found that this does not render a plaintiff's allegations speculative, implausible, or unbelievable.  *See Swierkiewicz*, 534 U.S. at 512 ("Before discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case

in a particular case. Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases."); *Ledesma v. Highlands Wood Gold & Country Club, Inc.*, No 11-cv-359, 2012 WL 1093643, at *4 (M.D. Fla. Apr. 2, 2012).

Moreover, as this case involves the alleged disparate treatment of employees in a particular worksite, as opposed to general members of the public, Escamilla's claimed awareness of the differential treatment is plausible. In any event, BCBSM has admitted that it approved accommodation requests based on the religious beliefs of some employees while rejecting the requests of others. Finally, Escamilla does not need to provide more detail regarding these disparately treated co-workers (e.g., their positions, supervisors, etc...) to allege that they were similarly situated. Again, this goes to the elements of a prima facie case, which Escamilla is not required to plead. Additionally, BCBSM's policy applied company wide, rendering distinctions and comparisons between employees irrelevant.

## IV. Conclusion

For the reasons set forth above, the Court holds that Escamilla alleges plausible religious discrimination claims under failure to accommodate and disparate treatment theories in her proposed Second Amended Complaint. The Court is, therefore, **DENYING AS MOOT** BCBSM's motion for judgment on the

pleadings (ECF No. 21) and **GRANTING** Escamilla's motion to file an amended pleading (ECF No. 22.)  The amended pleading Escamilla files, however, should correct the factual inconsistencies discussed in this decision.  It shall be filed within fourteen (14) days of this Opinion and Order.

    **SO ORDERED**.

s/ Linda V. Parker  
LINDA V. PARKER  
U.S. DISTRICT JUDGE

Dated: May 28, 2024